IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| AVALA ROSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:23-cv-405–HEH |
| | ) | |
| LOUIS DEJOY, *Postmaster General of* | ) | |
| *the United States Postal Service*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION
### (Granting in Part and Denying in Part Defendant's Motion to Dismiss)

THIS MATTER is before the Court on Defendant Louis Dejoy's ("Defendant")

Motion to Dismiss Second Amended Complaint (the "Motion," ECF No. 17), filed on

December 11, 2023. Defendant argues that *pro se* Plaintiff Avala Rose's ("Plaintiff")

Second Amended Complaint (ECF No. 13) should be dismissed under Federal Rule of

Civil Procedure 12(b)(6). (Mot. at 1.) The parties have each filed memoranda supporting

their respective positions, and Defendant's Motion is ripe for this Court's review. The

Court will dispense with oral argument because the facts and legal contentions are

adequately presented in the materials before it, and oral argument would not aid in the

decisional process. *See* E.D. VA. LOC. CIV. R. 7(J). For the reasons that follow, the

Court will deny Defendant's Motion in part and grant Defendant's Motion in part.

It is well-established that district courts must liberally construe a *pro se* litigant's

complaint. *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006). However, courts

need not attempt "to discern the unexpressed intent of the plaintiff." *Id.* Nor does the

requirement of liberal construction excuse a clear failure in the pleadings to allege a federally cognizable claim. *See Weller v. Dep't of Soc. Servs. of Baltimore*, 901 F.2d 387, 390–91 (4th Cir. 1990). As the Fourth Circuit explained in *Beaudett v. City of Hampton*, "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." 775 F.2d 1274, 1276 (4th Cir. 1985).

With these standards in mind, the Court must consider whether the Second Amended Complaint states a claim on which relief can be granted under Rule 12(b)(6). A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)) (internal quotations omitted). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey*, 706 F.3d at 387) (alteration in original). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 678).

In the context of a Title VII claim, surviving a motion to dismiss under Rule 12(b)(6) requires a plaintiff to "allege facts to satisfy the elements of a cause of action" under Title VII. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Thus, the factual allegations must be enough to "plausibly state a violation of Title VII above a speculative level." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (internal citation and quotations omitted). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

Plaintiff is a female employee of the United States Postal Service ("USPS"). (Second Am. Compl. ¶¶ 3, 14.) Defendant is Postmaster General of the USPS. (*Id.* ¶ 4.) Plaintiff alleges that Defendant violated Title VII by harassing and retaliating against her because of her religious beliefs, her request for reasonable religious accommodations, and her accusations of harassment and discrimination against USPS. (*Id.* ¶¶ 34–43.)

The exact timeline of the facts in this case is unclear. Plaintiff is a good faith observer of religious holidays and the "Saturday Sabbath." (*Id.* ¶ 15.) Plaintiff implies, but does not explicitly state, that she requested accommodations to observe the religious holidays and Saturday Sabbath. (*See id.* ¶¶ 34–38.) However, it appears that, at some point prior to August 2022, "Defendant discontinued reasonable accommodation" and instructed Plaintiff to use her sick leave and annual leave if she desired to take time off to observe her religion. (*Id.* ¶¶ 37–38.)

On August 16, 2022, Plaintiff submitted a harassment complaint. (*Id.* ¶ 16.) She does not specify the details of the complaint but states that it was submitted to Defendant. (*Id.*) At some point following this complaint, "Plaintiff was assigned to a less favorable position at the West[h]ampton Post Office." (*Id.* ¶ 17.) On September 2, 2022, "Defendant made offensive religious comments to Plaintiff". (*Id.* ¶ 18.) In October 2022, Plaintiff was denied access to hands-on window training, a uniform allowance, and the job code required to perform a window clerk position. (*Id.* ¶¶ 19–20.) Plaintiff states that Defendant sexually harassed her on October 26, 2022. (*Id.* ¶ 21.) That same day, Defendant blew an airhorn in her ear, causing her to develop tinnitus, hyperacusis, and hearing loss. (*Id.* ¶¶ 23, 25–26.) Defendant refused to provide her with the "medical care form to receive treatment" and "refused to report [the] injury to worker's compensation." (*Id.* ¶ 25.) Plaintiff does not provide any further details about any of these incidents.

On November 8, 2022, Plaintiff requested pre-complaint processing with the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* ¶¶ 6–7.) Plaintiff was provided notice of her right to file her discrimination complaint with the EEOC on February 4, 2023, and she formally filed her discrimination complaint against USPS on March 6, 2023. (*Id.* ¶¶ 8–9.) The EEOC dismissed this complaint on March 17, 2023, and Plaintiff filed a timely appeal. (*Id.* ¶¶ 9–10.)

In November 2022, Plaintiff was isolated from her co-workers. (*Id.* ¶ 27.) Plaintiff also states that Defendant turned the lights off while she worked, and re-assigned her to work in Sandston. (*Id.* ¶¶ 28–29.) Plaintiff requested accommodations in May

2023, but no further accommodations were granted beyond the use of annual and sick leave for religious observation days. (*Id.* ¶ 30.) In June–July 2023, "Plaintiff was excluded from all stand-up meetings and huddles." (*Id.* ¶ 31.) Defendant also chained Plaintiff's chair to her workstation, and removed the standard safety poles from her workstation. (*Id.* ¶ 32.)

Plaintiff brings seven (7) claims for relief based on these allegations: (1) failure to accommodate on the basis of religion; (2) sexual harassment; (3) religious harassment; (4) retaliation in the form of the injury and harm to Plaintiff's ears; (5) retaliation in the form of a hostile work environment; (6) retaliation and harassment in the form of isolation from Plaintiff's coworkers; and (7) retaliation in the form of exclusion from meetings. (*Id.* ¶¶ 34–43.) These claims fall into three (3) broad categories: the failure to accommodate claim, the harassment claims, and the retaliation claims.

Employers must "make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship." *U.S. Equal Emp. Opportunity Comm'n v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)) (internal quotations omitted). In order to establish that an employer violated this duty of reasonable accommodation under Title VII, a plaintiff must show that: "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *U.S. Equal Emp. Opportunity Comm'n v. Consol. Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017) (quoting *Firestone Fibers*, 515 F.3d at

5

312).  To prove the third element, a plaintiff must plead "some adverse employment action" resulting from the failure to comply with the employment requirement.  *Id.* at 143.  The Fourth Circuit defines an "adverse employment action" in this context as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (internal quotations omitted).

Defendant argues that Plaintiff's failure to accommodate claim should be dismissed because she never alleges that she was disciplined for her religious observation.  (Mem. in Supp. at 9, ECF No. 18.)  The Court disagrees.  Plaintiff states that, in the course of observing her religious belief, she "was assigned to a less favorable position at the West[h]ampton Post Office." (Second Am. Compl. ¶ 17.)  Plaintiff was later re-assigned to the Sandston Post Office.  (*Id.* ¶ 29.)  These types of transfers and re-assignments are likely to be considered adverse employment actions due to the fact that their "impact on the terms and conditions of employment is immediate and apparent." *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015).

Furthermore, the re-assignments in this case align with the time period in which Plaintiff was participating in her protected activity.  Temporal proximity is indicative of an adverse employment action.  *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (*abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).  The Court finds that Plaintiff has stated a plausible claim for

Defendant's failure to accommodate her religious beliefs. Thus, the Court declines to dismiss Claim One.

The Court now turns to Plaintiff's harassment claims. Plaintiff seeks relief for both sexual harassment and religious harassment. (Second Am. Compl. ¶¶ 39–41.) These claims fall under the same standard. For a Title VII workplace harassment claim to succeed, an employee must show that she was either subjected to *quid pro quo* harassment or subjected to a "hostile work environment." *Burlington Indus.*, 524 U.S. at 753–54. "[T]o establish *quid pro quo* liability, a plaintiff must prove 'that a tangible employment action resulted from a refusal to submit to a supervisor's sexual demands.'" *Moser v. MCC Outdoor, L.L.C.*, 256 F. App'x 634, 642 (4th Cir. 2007) (quoting *Burlington Indus.*, 524 U.S. at 742) (italics added).

Conversely, "to establish a hostile work environment claim, a plaintiff must show that the objectionable conduct was 'severe or pervasive.'" *Id.* (quoting *Burlington Indus.*, 524 U.S. at 754). In the context of a hostile work environment claim, a plaintiff must allege that the harassment "was (1) unwelcome, (2) based on [a plaintiff's protected characteristics], (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to [the defendant]." *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Some factors the Court must consider in determining if harassment was severe or pervasive enough to meet this standard include the frequency of the conduct, its severity, whether the conduct unreasonably interferes with an employee's work performance, and whether the conduct is physically threatening or humiliating. *Laurent-Workman v. Wormuth*, 54 F.4th 201,

7

211 (4th Cir. 2022). "Hostile work environment claims . . . [by] their very nature involve repeated conduct." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002). Occasional teasing or off-handed remarks and jokes typically do not meet this standard. *Laurent-Workman*, 54 F.4th at 211.

It appears that Plaintiff brings a hostile work environment claim for both the alleged sexual and religious harassment. However, Plaintiff has failed to show that the harassment she faced at USPS was severe or pervasive enough to establish a hostile work environment. For each of these claims, Plaintiff only provides one instance of harassment. She states that Defendant made "offensive and unwelcom[e] sexual comments" on October 26, 2022, and "offensive religious comments" on September 2, 2022. (Second Am. Compl. ¶¶ 18, 21–22, 39–40.) An isolated incident is not enough to establish the requisite level of severity or pervasiveness unless that incident is extremely serious. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (noting that singular acts of harassment may not be actionable on their own). Because Plaintiff fails to provide specific details about either incident, the Court is unable to evaluate their severity. There simply is not enough alleged in the Second Amended Complaint to show that these two (2) incidents involving offensive comments are sufficient to constitute a hostile work environment. Thus, the Court finds that Plaintiff has failed to adequately allege that the harassment is severe or pervasive, and the Court will dismiss Claims Two, Three, and Five.

Finally, the Court addresses Plaintiff's retaliation claims. Plaintiff seeks relief for various actions taken by Defendant which Plaintiff states are retaliation for her request

for religious accommodations and accusations of harassment and discrimination. (Second Am. Compl. ¶¶ 40–43.) To establish these claims, Plaintiff must show "beyond [a] speculative level that '(1) [s]he engaged in a protected activity; (2) the employer acted adversely against [her]; and (3) there was a causal connection between the protected activity and the asserted adverse action.'" *Laber v. United States Dep't of Def.*, No. 3:21-cv-502–HEH, 2021 WL 5893293, at *3 (E.D. Va. Dec. 13, 2021) (quoting *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008)). An adverse action has a causal connection with a protected activity when the action "might have dissuaded a reasonable worker" from continuing in her protected activity or asserting her right by filing a formal complaint against her employer. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal citations and quotations omitted); *Laurent-Workman*, 54 F.4th at 217. This causal connection can be established by showing temporal proximity to the protected activity or by showing some facts that suggest the adverse action was taken because of the protected activity. *Laurent-Workman*, 54 F.4th at 218–19. Additionally, a plaintiff must show the authority taking the adverse action has actual knowledge of the protected activity. *Roberts v. Glenn Indus. Grp.*, 998 F.3d 111, 124–25 (4th Cir. 2021).

Here, Plaintiff makes the necessary causal connection between the actions she perceives as retaliatory and her request for religious accommodations and subsequent complaints of harassment and discrimination. First, Plaintiff alleges that Defendant knew of her protected activities because she submitted her harassment complaint to him in

9

August 2022.[1]  (Second Am. Compl. ¶ 16.)  After this complaint, Plaintiff alleges that multiple retaliatory actions were taken against her by Defendant, including blowing an airhorn in her ear, isolating her, and excluding her from meetings.  (*Id.* ¶¶ 23, 27, 31.) Thus, Plaintiff has sufficiently pled Counts Four, Six, and Seven, and the Court will not dismiss them.

For the reasons stated above, Defendant's Motion will be granted in part and denied in part.  An appropriate order will accompany this Memorandum Opinion.

_____
/s/

Henry E. Hudson
Senior United States District Judge

Date: **August 16, 2024**
Richmond, Virginia

---

[1] Plaintiff uses "Defendant" throughout the Second Amended Complaint, which, read literally, means that the Postmaster General himself was the one who she complained to and who retaliated against her.  Later, in Plaintiff's Supplemental Response (ECF No. 22) to the Motion to Dismiss, Plaintiff states that her supervisor committed the retaliatory actions and lists multiple individuals as defendants, even though they are not defendants in the case.  (Suppl. Resp. at 1, 5.)  At this stage, the Court must take Plaintiff's facts as true and assume that the Postmaster General was the one who retaliated against Plaintiff.  If this is not correct, Plaintiff should seek leave to amend her Complaint.